# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**ANDREW DOMINQUE ROBINSON**  **PLAINTIFF**
**ADC #652013**

v.                    No: 5:18-cv-00278 JM-PSH

**SCOTT TAYLOR,** *et al.*                **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following proposed Recommendation has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

Plaintiff Andrew Dominique Robinson, an inmate at the Arkansas Division of Correction's ("ADC") Varner Supermax Unit, commenced this case by filing a complaint pursuant to 42 U.S.C. § 1983 (Doc. No. 2). Robinson sues Captain Scott Taylor, Captain Jonathan Smart, Lieutenant Daniel Laminack, Lieutenant Antonio

Johnson, Sergeant Kentarious Tate, Sergeant Remona Davis, and Sergeant Tashalia Dunlap (the "Defendants"). He alleges that Taylor, Smart, Laminack, Johnson, and Tate used excessive force to remove him from his cell on May 17, 2018, by repeatedly punching him in the head and face. Doc. No. 2 at 5-6 & 8-10. He also alleges that Taylor shot him with a taser and "drive stunned" him in the leg while he was restrained. *Id.* Robinson further alleges that Davis and Dunlap were present, overheard the other officers threaten him and then assault him, but failed to protect him from the other defendants' use of force. *Id.* Robinson sues the Defendants in both their official and individual capacities and seeks money damages. *Id.* at 5 & 11.

      The Defendants filed a motion for summary judgment, a brief in support, and a statement of facts asserting that they are entitled to judgment as a matter of law on the merits of Robinson's claim (Doc. Nos. 56-58). Although Robinson was notified of his opportunity to file a response, he did not do so. *See* Doc. Nos. 60 & 64. He also failed to file a statement setting forth disputed facts he believes must be decided at trial as required by Local Rule 56.1. Because Robinson failed to controvert the facts set forth in the Defendants' statement of facts, Doc. No. 57, those facts are deemed admitted. *See* Local Rule 56.1(c). The Defendants' statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and Defendants are entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment. The Court stated, "[i]f 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Id.* at 790 (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III. Facts

The following facts are taken from the Defendants' statement of facts, a video of the incident in question, and the following documentary evidence: an incident report describing the incident (Doc. No. 56-7) (the "*Incident Report*"); Robinson's deposition testimony (Doc. No. 56-3) (the "*Robinson Deposition*"); the Declaration

of Scott Taylor (Doc. No. 56-1) (the *"Taylor Declaration"*); the Declaration of Antonio Johnson (Doc. No. 56-2) (the *"Johnson Declaration"*); the Declaration of Daniel Laminack (Doc. No. 56-5) (the *"Laminack Declaration"*); the Declaration of Jonathan Smart (Doc. No. 56-6) (the *"Smart Declaration"*); the Declaration of Tashalia Dunlap (Doc. No. 56-8) (the *"Dunlap Declaration"*); the Declaration of Remona Davis (Doc. No. 56-9) (the *"Davis Declaration"*); and the Declaration of Kentarious Tate (Doc. No. 61-1) (the *"Tate Declaration"*).

At all times relevant to this lawsuit, Robinson was incarcerated at the Varner Supermax Unit of the ADC. According to Taylor and Johnson, Robinson causes problems nearly every day. *Taylor Declaration* at ¶ 2. According to Johnson, he frequently dashes, cusses, or threatens officers. *Johnson Declaration* at ¶ 4. Taylor describes Robinson as a dangerous inmate who is combative and uses his large size to his advantage. *Taylor Declaration* at ¶3. Johnson states that Robinson frequently threatens officers, stating that he will stab them or kill them any chance he gets. *Johnson Declaration* at ¶ 3.

Robinson sometimes refuses to comply with orders and frequently refuses to go back into his cell or refuses to submit to restraints to leave his cell. *Taylor Declaration* at ¶¶ 3-4; *Johnson Declaration* at ¶ 5. In those instances, Robinson is forcibly removed from his cell. *Robinson Deposition* at 30-32. Robinson estimates that he has been involved in more than 50, and perhaps even more than 100 cell

extractions. *Id*. at 32. According to Johnson, Robinson sometimes submits to restraints once a cell extraction team is assembled, but other times he will continue to refuse, telling officers, "Y'all gonna have to come in and get me." *Johnson Declaration* at ¶ 5.

In August 2017, Robinson was involved in an incident at the Tucker Max Unit, in which he and other inmates took some correctional officers hostage. *Statement of Undisputed Material Facts* at ¶ 10 (citing *State v. Andrew Robinson*, Jefferson Co. Case No. 35CR-18-68 (Jan. 31, 2018)).[1] Those officers were seriously injured, and the inmates involved were charged criminally. *Id.* Taylor explains that because of incidents like this, and because Robinson is so aggressive and combative, he can only be escorted by officers holding the rank of lieutenant or above. *Taylor Declaration* at ¶ 5.

On May 17, 2018, a team of officers was conducting searches of cells in Isolation # 4, where Robinson was housed. *Statement of Undisputed Material Facts* at ¶ 12; *Incident Report 2018-05-219* at 1. The officers conducting searches included Smart, Laminack, and Tate. *Statement of Undisputed Material Facts* at ¶ 13. Smart, Laminack, and Tate searched cells in order down the hallway where Robinson was housed. *Laminack Declaration* at ¶ 4. There were approximately six cells ahead of

---

[1] The docket for this case is available at caseinfo.arcourts.gov/cconnect. A jury trial is currently scheduled for January 12, 2022. *See* Order entered May 25, 2021.

Robinson's cell on the hall. *Id.* While the officers were searching the other cells, Robinson was yelling, cussing, and making threats. *Id.* at ¶ 5. Before the officers arrived at Robinson's cell, he stated, "Y'all are gonna have to come in and get me, I'm not coming out." *Id.* at ¶ 6. Robinson also said, "God Blue don't go, if he goes, he's taking somebody with him." *Id.* at ¶ 7. The officers later learned that "God Blue" is Robinson's nickname. *Id.* Robinson acknowledged in his deposition that he does not have the right to refuse a shakedown. *Robinson Deposition* at 21.

When the officers reached Robinson's cell, he had wrapped himself in his sheets and was holding his mattress in front of him.[2] *Laminack Declaration* at ¶ 8; *Tate Declaration* at ¶ 7; *Robinson Deposition* at 22-24. Laminack gave Robinson a direct order to submit to hand restraints so the officers could search his cell. *Laminack Declaration* at ¶ 9. Robinson refused and instead "dashed" officers by throwing a cup of undiluted liquid bleach on them. *Id.* at ¶¶ 10-11; *Smart Declaration* at ¶¶ 4-5; *Tate Declaration* at ¶¶ 4-5. Laminack explains in his declaration that while some inmates are permitted to have diluted bleach for cleaning purposes, inmates in the Supermax Unit such as Robinson are not permitted to have

---

[2] Inmates wrap their faces in sheets as a way to protect themselves from CS gas or pepper spray. *Id.* Inmates hold mattresses in front of themselves to protect themselves from rubber stingers. Rubber stingers, also known as sting-ball grenades or stinger grenades, are explosive grenades that upon initiation eject rubber balls into a radius surrounding the device. Some incorporate a chemical agent, like CS or OC gas. They are designed for police and corrections applications. *Laminack Declaration* at ¶ 18.

any bleach at all. *Laminack Declaration* at ¶ 12. When Robinson reached to throw a second cup of bleach on the officers, Laminack administered a burst of OC/CS Stream in an effort to bring Robinson into compliance. *Id.* at ¶ 13. Laminack gave Robinson another direct order to submit to hand restraints, and he refused again. *Id.* at ¶ 14. Because Robinson threatened he would be violent if the officers opened the door, and because he would not submit to hand restraints, Laminack notified Taylor so he could assemble a cell extraction team. *Id.* at ¶ 15; *Smart Declaration* at ¶ 6; *Tate Declaration* at ¶ 6.

Taylor assembled the cell extraction team, which included himself, Smart, Johnson, Tate, Johnson, Laminack, and Sergeant Butler. *Incident Report* at 1. The cell extraction team assembled, and Taylor gave Robinson a direct order to submit to restraints. *Taylor Declaration* at ¶ 9; *Johnson Declaration* at ¶ 9; *Laminack Declaration* at ¶ 16; *Video* at 00:00:32-37. Robinson refused, so the cell extraction team began a planned use of force. *Taylor Declaration* at ¶ 10-11; *Video* at 00:00:32-37. Laminack deployed a stinger grenade so the cell extraction team could safely gain entry to Robinson's cell. *Laminack Declaration* at ¶ 18; *Video* at 00:01:04-22. In the video of the incident, as Laminack deploys the stinger grenade, Robinson can be heard yelling, "A stinger grenade!? That's it!?" *Video* at 00:01:20-22.

After Laminack deployed the stinger grenade, the cell extraction team entered Robinson's cell. *Laminack Declaration* at ¶ 19; *Taylor Declaration* at ¶ 12-13; *Johnson Declaration* at ¶¶ 10-11; *Smart Declaration* at ¶ 7; *Tate Declaration* at ¶ 8. Officers ordered Robinson to stop resisting, to no effect. *Video* at 00:02:10-20. Because of Robinson's continued aggressive, combative behavior, Taylor tased Robinson.[3] *Taylor Declaration* at ¶ 16; *Laminack Declaration* at ¶ 20. The stinger grenade and TASER did not have the desired effect on Robinson. *Id.* at ¶ 22. Although the TASER enabled officers to apply hand restraints, Robinson continued to resist and be combative. *Id.* at ¶¶ 22-25*; Taylor Declaration* at ¶¶ 16-17. Because additional force was needed to regain control of Robinson, Taylor applied the TASER to Robinson's legs in drive-stun mode. *Taylor Declaration* at ¶ 18; *Laminack Declaration* at ¶ 24. In the video of the incident, Robinson can be heard laughing and yelling, "Tase me again! That feel good! Do that again!". *Video* at 00:02:34-59. *See also Robinson Deposition* at 25. At that point, officers were finally able to apply leg restraints to Robinson. *Taylor Declaration* at ¶ 19; *Laminack Declaration* at ¶ 25.

---

[3] According to Taylor, TASERs have two modes: "probe" mode and "drive-stun" mode. *Taylor Declaration* at ¶ 15. When deployed in probe mode, the TASER sends out probes that attach to a person's clothing or skin and briefly cause temporary incapacitation. *Id.* In drive-stun mode, the TASER prongs are pressed against the person's clothing or skin. *Id.* Drive-stun mode does not result in incapacitation. *Id.* It is not clear whether Taylor used the probe or drive stun mode the first time he tased Robinson.

Once Robinson was restrained and under control, he was dragged out of his cell and carried to the shower so he could decontaminate. *Video* at 00:04:33-5:48; *Taylor Declaration* at ¶ 20; *Laminack Declaration* at ¶ 26; *Incident Report* at 1. Robinson testified that he refused to decontaminate because the water was hot. *Robinson Deposition* at 19, 26-27. Medical staff then examined Robinson. *Incident Report* at 1 & 24-25. His records indicate that when a nurse arrived, he was "not in any distress." *Id.* at 24-25. There was a small laceration on Robinson's nose that did not require medication or treatment beyond cleaning. *Id.* TASER probes had attached to Robinson's skin, and photos in the incident report show that they left very small marks. *Id.*

Laminack charged Robinson with a major disciplinary violation for his conduct. *Laminack Declaration* at ¶ 27; *Incident Report* at 11. Robinson chose not to appeal the disciplinary. *Robinson Deposition* at 26. Robinson admitted he does not clearly remember this incident because he has been involved in so many cell extractions. *Id.* at 23.

The officers involved in the incident dispute Robinson's claims that they punched him in the head and face. *Taylor Declaration* at ¶¶ 23-23; *Laminack Declaration* at ¶¶ 29-30; *Johnson Declaration* at ¶¶ 15-16; *Smart Declaration* at ¶ 9; *Tate Declaration* at ¶¶ 10-11. Due to the size of Robinson's cell and the number of people inside it, it would have been very difficult for any officer to punch

Robinson without hitting other officers. *Taylor Declaration* at ¶ 23; *Johnson Declaration* at ¶ 17. Additionally, the video of the cell extraction does not show any officer punching or hitting Robinson.

Although Robinson claims the officers threatened him because of his involvement in the hostage situation at Tucker Max, most of the officers were either unaware the incident occurred, or unaware that Robinson was involved. *Taylor Declaration* at ¶ 26; *Laminack Declaration* at ¶ 31; *Johnson Declaration* at ¶ 18; *Smart Declaration* at ¶ 10; *Tate Declaration* at ¶ 12. According to their declarations, which were not disputed by Robinson, none of the Defendants threatened Robinson about the Tucker Max incident before or during his cell extraction or heard it mentioned. *Id.*

According to her declaration, Tashalia Dunlap was in another area of the prison during Robinson's cell extraction on May 17, 2018. *Dunlap Declaration* at ¶¶ 3-5. She was not involved with the cell extraction and did not witness it. *Id.* at ¶¶ 6-8; *Taylor Declaration* at ¶ 25. Remona Davis was also in another area of the prison during Robinson's cell extraction on May 17, 2018. *Davis Declaration* at ¶¶ 5-6; *Taylor Declaration* at ¶ 24. She was not involved with the cell extraction and did not witness it. *Davis Declaration* at ¶¶ 7-8; *Taylor Declaration* at ¶ 24.

### IV. Analysis

### A.     *Sovereign Immunity*

The Defendants correctly assert that Robinson's monetary claims against them in their official capacities are barred by sovereign immunity.[4] A suit against a state employee in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989); *Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989). Accordingly, the Defendants are entitled to summary judgment on Robinson's official capacity claims.

### B.     *Qualified Immunity*

The Defendants argue that they are entitled to qualified immunity with respect to Robinson's individual capacity claims. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a

---

[4] Robinson does not seek injunctive relief. Doc. No. 2 at 11.

defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The unnecessary and wanton infliction of pain violates the Eighth Amendment's prohibition on cruel and unusual punishment. "Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (quoting *Hudson v. McMillian,* 503 U.S. 1, 6–7). *See also Whitley v. Albers*, 475 U.S. 312, 322 (1986) (holding that, in an excessive force case, there must be "a reliable inference of wantonness," and not "a mere dispute over the reasonableness of particular use of force or the existence of arguably superior alternatives"). Factors which inform this inquiry include the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent

of injury suffered by the inmate. *Jones v. Shields*, 207 F.3d at 495. Unless "'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury.'" *Johnson v. Bi-State Justice Ctr./Arkansas Dep't of Corr.*, 12 F.3d 133, 136 (8th Cir. 1993) (*citing Whitley,* 475 U.S. at 322).

The Court has carefully reviewed the record, including the video recording submitted as evidence, and finds that Robinson's version of what happened on May 17, 2018, is blatantly contradicted by the evidence in the record. The video shows that Robinson was given several opportunities to submit to restraints and leave his cell, but refused to do so. Instead, he wrapped himself in sheets and held a mattress in front of him. His deposition testimony makes clear that he knew force would be applied if he did not submit to restraints and allow the officers to conduct a search of his cell. The evidence shows that officers attempted to subdue and restrain Robinson by using various methods of force – Laminack first used chemical spray. When that did not work, a cell extraction team was organized to remove Robinson from his cell. Laminack attempted to gain Robinson's cooperation by deploying a stinger grenade, and Robinson merely taunted the officers, saying "A stinger grenade? That's it?" The video shows that a number of officers then entered Robinson's cell. Once Taylor tased Robinson, they were able to restrain his hands; it took another drive-stun to his legs in order to restrain his legs. All the while,

Robinson laughed, stated the taser felt good, and asked to be tased again. He did not complain about any punching or hitting, and the video does not show any officers punching or hitting him. Rather, they appear calm, although it took a great deal of effort to hold Robinson down to restrain him. The video does not show that Robinson was dragged out of his cell; at one point, it appears that officers tried to help him stand up, but he would not comply. Additionally, the record in this case shows that Defendants Dunlap and Davis were not involved in the cell extraction and were not present in the area when it occurred.

The undisputed facts establish that force was not applied maliciously and sadistically to cause harm. Rather, there is ample evidence that various levels of force were applied in a good faith effort to maintain or restore discipline. Accordingly, Robinson's constitutional rights were not violated, and Defendants are entitled to qualified immunity.

## V. Conclusion

The Defendants' motion for summary judgment (Doc. No. 56) should be granted and Robinson's claims dismissed with prejudice.

IT IS SO RECOMMENDED this 13th day of December, 2021.

_____
UNITED STATES MAGISTRATE JUDGE